UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LAURA WIER,**

      **Plaintiff,**   Case No. 10-CV-11468

v.   HONORABLE DENISE PAGE HOOD

**COUNTRYWIDE BANK, N.A. and
BANK OF AMERICA CORPORATION,**

      **Defendants.**

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

This matter is before the Court on Defendants' Motion to Dismiss **[Docket No. 7, filed on April 21, 2010]**.[1] Plaintiffs filed a response on May 27, 2010 **[Docket No. 9]**, to which Defendants filed a reply **[Docket No. 12, filed on June 3, 2010]**.

**II.    Statement of Facts**

On February 9, 2006, Plaintiff refinanced a mortgage loan on her home in Holly, Michigan through Defendant Countrywide N.A. ("Countrywide"), obtaining an adjustable rate loan ("Adjustable Rate Loan") in the amount of $465,000, and a home equity line of credit ("Home Equity Loan") in the amount of $60,000.  Plaintiff granted a senior mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as security for the Adjustable Rate

---

[1] Defendants' Motion to Dismiss was also filed as Docket #13, on June 3, 2010, the date oral arguments were heard before the Court.

1

Loan, and a junior mortgage to MERS as security for the Home Equity Loan. Sam Ames served as the mortgage officer for both loans. At closing, Defendant Countrywide provided Plaintiff with a Truth in Lending Disclosure Statement ("Disclosure Statement") outlining Plaintiff's anticipated payment schedule. Both loans have since been assigned to Defendant Bank of America ("BOA").

The parties do not dispute the terms of the loan agreements as they appear on the face of the documents. The parties agree that both loan agreements indicate that the applicable interest rates are subject to increase. Substantially in dispute is the content of Mr. Ames' oral representations to Plaintiff regarding the terms of her loans prior to closing, and whether those alleged representations became terms of the agreements. Plaintiff alleges that Mr. Ames, as Countrywide's agent, informed Plaintiff that her monthly payments would be $900.00 per month, that the value of Plaintiff's property would continue to rise and cover any increase in the principal balance of Plaintiff's home, and that Plaintiff would still be considered current on the loans while making very low monthly payments. Plaintiff also alleges that her actual payments far exceeded Mr. Ames' estimates, that Mr. Ames did not inform her that the Adjustable Rate Loan was a "negative amortizing" loan, and that the value of her home is far lower than what it was appraised at prior to closing.

Plaintiff has brought this action claiming (1) fraudulent misrepresentation/fraudulent inducement, (2) negligent misrepresentation, (3) violation of the Mortgage Brokers, Lenders, and Services Licensing Act, M.C.L. § 445.1651, et seq., and (4) breach of contract.

**III.   Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of

the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

As the Supreme Court has stated, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-1951, 173 L. Ed. 2d 868 (2009). Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

**IV.     Discussion**

    **A.     Plaintiff's Claims Against Defendant Bank of America Corporation**

3

Defendants argue that all claims against Defendant BOA should be dismissed because Bank of America "had nothing to do with the origination or servicing of the Loans," and because, "BOA has no interest in the [home] as it was never a mortgagee, servicer, debt collector, or owner of the Loans." Plaintiff bases her various state law claims against Bank of America, who was not involved in the origination of Plaintiff's mortgage, on the fact that Countrywide assigned the mortgages to Bank of America.

"It is axiomatic that a claim for misrepresentation requires a false statement by the defendant." *Chowdhury v. Aegis Mortgage Corporation*, 2009 U.S. Dist. LEXIS 94455, *8 (E.D. Mich. 2009) (finding that the plaintiff's claims of misrepresentation failed as they related solely to the actions of the originating agent, not the defendant who was merely an assignee). The court in *Chowdhury* noted "assignee liability applies only to receipt of contractual liabilities under assignment," not claims of tortuous misconduct. *See id.* at *11. "Simply put, Countrywide cannot be liable for the tortious misrepresentations of Aegis simply because it is the assignee of the mortgage." *Id.* The court in *Chawdhury* also concluded that the plaintiff's MBLSLA claim must fail as to the assignee because the plaintiff could not allege fraudulent conduct on the part of the assignee. *Id.* at 12.

In the instant case, Plaintiff has not alleged any false statement on the part of BOA itself. As in *Chowdhury*, Bank of America, the assignee, "cannot be liable for the tortuous misrepresentation" of Country, the originator of the loans. Plaintiff's claims of misrepresentation as to Defendant BOA must be dismissed.

      **B.**    **Count I-Fraudulent Misrepresentation/Fraudulent Inducement**

In Count I of her Complaint, Plaintiff alleges that Defendant Countrywide provided "materially false property value and payment term disclosures to Plaintiff at closing." In

4

particular, Plaintiff alleges that through Mr. Ames, Defendant Countrywide falsely understated the amount of Plaintiff's fully amortized monthly payment. In addition to these statements, Plaintiff alleges, without pointing to any specific evidence, that the true value of Plaintiff's home was less than the value of the loans made by Countrywide. Plaintiff claims that Countrywide knew, or was recklessly unaware, that these representations were false, that Countrywide intentionally made these representations in order to induce Plaintiff to take out the loans and grant the mortgages, and that Plaintiff indeed took out the loan in reliance on Countrywide's misrepresentations.

Defendants argue that Plaintiff's common law misrepresentations should be dismissed because they are preempted by the National Bank Act ("NBA"). The NBA vests in national banks, such as Countrywide and BOA, "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh); *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010). The Statue provides that the "Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the responsibilities of the office." 12 U.S.C. § 93a. This authority includes the authority to define the "incidental powers" of national banks beyond those specifically provided in the statute. *See* 598 F.3d at 555. "[Office of the Comptroller of the Currency ("OCC")] regulations possess the same preemptive effect as the Act itself." *Id.* (citations omitted).

The NBA, along with OCC regulations, do not preempt the applicability of all state laws to national banks: "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (U.S. 2007) (citations omitted). "States are permitted to regulate the activities of national banks where doing so does not prevent

or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Id.* at 12.  Several district courts have held that the NBA does not preempt a claim of "express deception asserted under state law." *See Martinez,* 598 F.3d at 555-56 (citing numerous cases in support of this proposition).  However, when addressing "Real Estate Lending and Appraisals," the OCC provides in 12 C.F.R. § 34.4(a), under the heading "Applicability of state law":

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks.  Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and §34.3, without regard to state law limitations concerning . . . (9) "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in [credit-related documents]; (10) [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages . . . .

*See also Martinez,* 598 F.3d at 556.

Here, Plaintiff's claims of fraudulent misrepresentation presuppose that certain information needed to be disclosed during the origination process.  As such, Plaintiff's claims of fraudulent misrepresentation are preempted by the NBA and must be dismissed.  *See id.* at 556-57 (concluding that, under 12 C.F.R. § 34.4(a)(9), (10), the plaintiff's fraud claims were preempted by the NBA).

Even if Plaintiff's claim was not preempted, an actionable claim for fraud under Michigan law must demonstrate the following:

> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Schwartz v. EDS*, 913 F.2d 279, 285 (6th Cir. 1990) (quoting *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)).  While statements relating to past

6

or present facts may be actionable, those relating to a future promise or expectation are not. *See Webb v. First of Michigan Corp.*, 195 Mich. App. 470, 474. 491 N.W.2d 851 (1992). Also, it is well established under Michigan law that mere expressions of opinion, including a "professional opinion," are not actionable statements. *See Ridha v. Mortgage Elec. Registration Sys.*, 2010 U.S. Dist. LEXIS 123869, *5 (E.D. Mich. 2010) (citation omitted).

Here, Plaintiff's fraud claims are based on statements of opinion and future expectations or promises. Mr. Ames' alleged representations that property values would continue to rise and that Plaintiff would thereby be able to remain current while still making low monthly payments are clearly expectations of future events. Regarding the appraisal of Plaintiff's property, M.C.L. § 331.2609 defines an "[a]ppraisal" as "an opinion, conclusion, or analysis relating to the value of real property," and, as such, it is insufficient to support a claim of fraudulent misrepresentation. *See also Ridha*, 2010 U.S. Dist. LEXIS 123869 at *5. Because Plaintiff's allegations of fraud relate either to statements of opinion or future expectations, Plaintiff cannot make out a cognizable misrepresentation claim.

To the extent that Plaintiff's fraudulent misrepresentation claim is based on the oral representations of Mr. Ames, the claim also fails under the Michigan Statute of Frauds. M.C.L. § 566.132(2) provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

Applying MCL § 566.132(2), this Court found that "Michigan law does not recognize claims to enforce oral promises against financial institutions." *LaSalle Bank Nat'l Ass'n v. Ray*, 2011 U.S. Dist. LEXIS 12964, *8 (E.D. Mich. 2011) (citing *Crown Tech. Park v. D&N Bank, FSB*, 242

Mich. App. 538, 619 N.W.2d 66 (2000)). Plaintiff does not contend that the alleged oral promises do not fall within the scope of the statute of frauds, but instead argues that "the statute of frauds was designed to prevent fraud, not as an instrumentality to be used in aid of fraud." Resp. to Mot. to Dismiss at 7. This argument is unpersuasive because, as discussed above, Plaintiff cannot state a cognizable fraud claim.

Plaintiff appears to make an equitable estoppel argument in response to Defendants' reliance on the statute of frauds. As Plaintiff recognizes, "[e]stoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 399, 729 N.W. 2d 277 (2006).

Plaintiff cannot satisfy the elements of an equitable estoppel defense. First, as discussed above, the statements underlying Plaintiff's misrepresentation claim are not facts, but rather statements of future expectations, or mere opinion. Second, the facts on record do not show that Plaintiff's reliance on Defendants' or Mr. Ames' alleged misrepresentations was justifiable. The Disclosure Statement, on its face, states in capital letters, "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." Ex. 11 to Def.'s Mot. to Dismiss. Even the payment amounts reflected in the Disclosure Statement do not accord with the $900.00 amount allegedly stated by Mr. Ames. While Plaintiff complains that her actual payments exceeded those reflected in the Disclosure Statement, the discrepancy between the Disclosure Statement and the $900.00 amount put Plaintiff on notice of the alleged unreliability of the amounts stated in the Disclosure Statement. Plaintiff's equitable estoppel argument fails, and her claim for fraudulent misrepresentation must be dismissed.

### C. Count II: Negligent Misrepresentation

In Count II of her Complaint, Plaintiff alleges that Defendant, as the mortgagee, stood to benefit from its relationship with Plaintiff, and that Defendant therefore owed Plaintiff a duty of care. Plaintiff claims that Defendant breached that duty of care by negligently preparing information relating to the values of her property, payment amounts contained in the loan documents, whether Plaintiff could refinance or sell her property, and information relating to closing costs "without reasonable care as to their truth or falsehood," and that she "justifiably relied on said information to her detriment, suffering damages."

The elements of negligent misrepresentation are: (1) justifiable and detrimental reliance on (2) information provided without reasonable care (3) by one who owed a duty of care. *See German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 958, 964 (W.D. Mich. 2007).

As discussed above with regard to Plaintiff's fraudulent misrepresentation claim, Plaintiff's negligent misrepresentation claim is barred by the Michigan Statute of Frauds. "If a borrower has a separate claim for negligence that does not rely on enforcing the terms of an alleged oral promise, then MCL § 566.132(2) is not a bar to adjudicating the claim on its merits." *Crown Tech. Park, et al. v. D&N Bank, FSB*, 242 Mich. App. 538, 552, 619 N.W.2d 66 (2000). In *Crown Tech.*, the court found that the plaintiff could not bring a claim against the defendant predicated on an alleged oral promise to waive a prepayment term in a promissory note because the Michigan Statute of Frauds prevented the plaintiff from asserting claims of intentional and negligent misrepresentation. *Id.* Here, Plaintiff's negligence claim relies on enforcing the terms of alleged promises, oral or otherwise, that were not contained in a signed writing, as required by the statute of frauds. Plaintiff's claim of negligent misrepresentation based on any alleged promises or commitments not contained in a signed writing must be dismissed.

Also, as discussed above with respect to Plaintiff's fraudulent misrepresentation claim, Plaintiff's negligent misrepresentation claim presupposes the existence of state law disclosure requirements on the part of Defendants, which are national banks, and is therefore preempted by the NBA. Plaintiff's negligent misrepresentation should be dismissed for this reason as well.

### D. Count III: Mortgage Brokers, Lenders, And Servicers Licensing Act ("MBLSLA"), M.C.L. § 445.1651, et seq.

Based on the same facts underlying Plaintiff's misrepresentation claims, Plaintiff claims in Count III of her Complaint that Defendant violated MBLSLA. M.C.L. § 445.1672 provides in part:

> It is a violation of this act for a licensee or registrant to do any of the following:
> (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act
> (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.

However, by its terms, MBLSLA exempts from its coverage "depository financial institution[s]":

> Sec. 25. This act does not apply to any of the following:
> (a) A depository financial institution whether or not the depository financial institution is acting in a capacity of a trustee or fiduciary.

M.C.L. § 445.1675. MBLSLA defines "depository financial institution" as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, credit union, or an entity of the federally chartered farm credit system." M.C.L. § 445.1651a(f).

In the case at hand, Plaintiffs do not dispute that Countrywide, the original lender, and Defendant Bank of America are 'depository financial institutions' within the meaning of MBLSLA. Plaintiff instead argues "the home mortgage arms of Defendants are not depository financial institutions by the meaning of the MBLSLA." Pl. Resp. to Def. Mot. to Dismiss at 12. Plaintiff offers no legal authority in support of this division-specific treatment of depository financial institutions.

10

Plaintiff also contends that, aside from the issue of MBLSLA's applicability to Defendants, "MBLSLA is clearly applicable to Sam Ames as a mortgage broker." Pl. Resp. to Def. Mot. to Dismiss at 12. First, only Countrywide and Bank of America are Defendants to this action, not Mr. Ames. Second, the suggestion that MBLSLA exempts Defendants as depository financial institutions while still applying to Mr. Ames as Defendants' mortgage broker is erroneous as 445.1651a(m) defines a "loan officer" as "an individual who is an employee or agent of a mortgage broker, mortgage lender, or mortgage servicer; who originates mortgage loans; and *who is not an employee or agent of a depository financial institution* or a subsidiary or affiliate of a depository financial institution." (emphasis added). Defendants are 'depository financial institutions' within the meaning of MBLSLA. Defendants, as well as Mr. Ames, are not within the statute's regulatory purview and Plaintiff's MBLSLA claim is dismissed.

### E.     **Count IV: Breach of Contract**

Plaintiff claims that the Disclosure Statement provided to her prior to closing is part of the "Note" by incorporation, and that because the payments reflected in the Disclosure Statement differs from her actual payments, Defendants are in breach of contract. Although none of Plaintiff's claims are brought under the Truth in Lending Act (TILA), the Court notes that it is the purpose of TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. For the following reasons, this claim for breach of contract is dismissed.

In order to recover for breach of contract under Michigan law, a plaintiff must prove (1) the existence of a contract, (2) the terms of the contract, (3) breach of the contract by the

11

defendant, and (4) that the breach caused the plaintiff's injury. *See Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).

Here, the parties dispute the terms of the contract. While Plaintiff's breach of contract claim is predicated upon the incorporation of the Disclosure Statement, Plaintiff fails to identify any provision within the Adjustable Rate Note, or the Home Equity Loan incorporating by reference the terms of the Disclosure Statement. Complaint ¶ 45. On its face, the Disclosure Statement states: "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." Ex. 10 to Def.'s Mot. to Dismiss.[2] Plaintiff cannot show that terms of the Disclosure Statement are terms of the contract; the breach of contract claim founded upon these terms must fail.

**V.     Conclusion**

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss **[Doc. No. 7, filed on April 21, 2010; Docket No. 13, filed on June 3, 2010]** is GRANTED.

IT IS FURTHER ORDERED that this matter is DISMISSED.


s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE


Dated: March 31, 2011March 31, 2011

---

[2] While Plaintiff stresses that Mr. Ames informed her that her payments would be $900.00 per month, the TILA document does not reflect any such figure.

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2011March 31, 2011, by electronic and/or ordinary mail.


                                s/LaShawn R. Saulsberry
                                Case Manager, (313) 234-5165